# EXHIBIT B

E-FILED: Montgomery Circuit Court
Docket: 4/25/2024 1:06 PM; Submission: 4/25/2024 1:06 PM
Envelope: 16223278

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

DAVID B. FALK )
6801 Hillmead Road )
Bethesda, Maryland 20817 )
)
    Plaintiff, )
)
    v. )  Case No.  C-15-CV-24-001969
)
JEFFREY LYNN GREEN )
9500 SW 61st Court )
Pinecrest, Florida 33156 )
)
    Defendant. )

## COMPLAINT FOR MONEY DAMAGES

Plaintiff, David B. Falk, through undersigned counsel, hereby files this Complaint for Money Damages, against Defendant Jeffrey Lynn Green. As grounds for this action, the Plaintiff states as follows:

### JURISDICTION

e376cnsMS

1. Jurisdiction is proper in this Court pursuant to Md. Cts. & Jud. Proc. Secs. 1-501 and 6-103(b)(1).

### THE PARTIES

2. Plaintiff, David B. Falk (hereinafter "Mr. Falk" or "the Plaintiff"), lives at 6801 Hillmead Road, Bethesda, Maryland 20817, in Montgomery County, Maryland.

3. Defendant, Jeffrey Lynn Green (hereinafter "Mr. Green" or "the Defendant"), was born in Cheverly, Maryland, was raised in College Park, Maryland, and has lived in both southern Maryland and northen Virginia at various times of his professional basketball career. He currently lives in Miami, Florida, and in Houston,

2

Texas. Mr. Green retains strong ties to the southern Maryland area.

**BACKGROUND**

4. For over 30 years, Mr. Falk has been the premier agent for professional basketball players who play in the National Basketball Association ("NBA"). He has earned a well-deserved reputation as a hard-driving but ethical and fair agent.

5. Over the course of his successful career, Mr. Falk became the go-to agent for over 100 NBA players because he produced successful results for his clients.

6. Mr. Falk has been more than a successful NBA agent. His success has derived from the fact that he cares about his players and their welfare, beyond his role as their NBA agent.

7. Mr. Falk's clients have relied on Mr. Falk not only as an NBA agent, but as a trusted and valued advisor, confidant and supporter for clients' interests far beyond their basketball careers.

8. David Falk has always gone "the extra mile" for his clients, looking after their interests outside of the basketball court. Mr. Falk develops friendships with his clients, often close friendships.

9. Jeff Green was born in Cheverly, Maryland, and was raised in College Park, Maryland. He has lived in both Maryland and Virginia at various times of his professional basketball career.

10. Mr. Green led Northwestern High School in Hyattsville,

3

Maryland to the Maryland state basketball championship in 2004.

11. Mr. Green was an All-American basketball player at Georgetown University in Washington, D.C., leaving Georgetown in 2007 and entering the NBA draft.

12. Mr. Falk was Mr. Green's professional basketball agent through much of Green's NBA career, including upon his entry into the NBA draft in 2007.

13. Mr. Green has had a peripatetic NBA career. He has played for approximately 11 NBA teams in 15 NBA seasons, moving from city to city as he changed teams.

14. Mr. Green's NBA career is ongoing. He currently plays for the Houston Rockets. In 2022-2023, Mr. Green played for the NBA champion Denver Nuggets.

15. While living in different cities during his NBA career, Mr. Green has retained strong ties to his home state of Maryland. In fact, Mr. Green has recent and current real property and business interests in Maryland:

* In September 2010, Mr. Green purchased a residential property located at 13207 Anthem Greenfields Drive, Bowie, Maryland 20720; he sold this property in March 2023;

* JLG Ventures, LLC obtained via a transfer from Mr. Green's sister on July 13, 2009, a residential property located at 2402 Nicol Circle, Bowie, Maryland 20721; JLG Ventures, LLC currently owns this real property;

4

\* JLG Ventures, LLC (Maryland) is registered to do business in Maryland – it has a Maryland Registered Agent.

16. Although originally drafted by the Boston Celtics, Mr. Green played for the Seattle SuperSonics-Oklahoma City Thunder[1] ("OCT") from 2007 through 2011.

17. On February 24, 2011, Mr. Green was traded by OCT to the Boston Celtics.

18. On December 11, 2011, following the conclusion of the NBA lockout, Mr. Green re-signed with Boston.

19. In 2011, after re-signing with the Celtics, Mr. Green was diagnosed with a life-threatening and career-threatening medical issue.

20. Eight days after signing a contract with the Celtics in December 2011, the Celtics voided his contract after a physical examination revealed a dangerously enlarged aortic root in his heart.

21. Mr. Green underwent heart surgery in January 2012, and he missed the entire 2011-2012 NBA season.

22. At this time, Mr. Green's health, NBA career and financial security were in very serious jeopardy. It was unclear if Jeff Green would ever play basketball again.

23. Facing these health and financial challenges, Jeff Green

---

[1] The Seattle franchise moved to Oklahoma City during Mr. Green's tenure.

5

turned to the one person he knew he could rely on - David Falk.

24. ████████████████████████████████████████████

████████████████████████████████████████  ██████████

████████████████████████████████████████████

25. ████████████████████████████████████████

████████████████████████████████████████████

██████████

26. Mr. Green communicated with Mr. Falk at Falk's home office, in Montgomery County, Maryland, and Green asked Mr. Falk for guidance and input on these health issues. In so doing, Mr. Green transacted business in Montgomery County, Maryland, where Mr. Falk lives, maintains his home office, and regularly conducts business. In fact, Green had previously participated in meetings with Mr. Falk at Mr. Falk's home office.

27. Mr. Green knew that the services he sought from Mr. Falk were completely outside of the scope of Mr. Falk's duties as his NBA agent. The defined and limited scope of NBA agents' duties are clearly set forth in the National Basketball Players Association ("NBPA") Rules and Regulations Governing Agents, and are codified in the Standard Player-Agent Contract ("SPAC") between David Falk and Jeff Green. (See Falk-Green June 19, 2007 Agreement, Attachment 1.)

28. The issues for which Mr. Green sought Mr. Falk's services related to his health issues ████████████████████████████████

6

██████████████████████████    ████████████████  ████

████████████  These issues are completely outside the scope of the

Falk-Green SPAC and Mr. Falk's agent duties under both the NBPA

Rules/Regulations and the Falk-Green SPAC.

29. Mr. Green knew this when he sought Mr. Falk's help ████

████████████████████████████████████████████  Green knew that

Mr. Falk's services were not covered by the SPAC and its

compensation plan for Mr. Falk for his NBA agent services.

30. Mr. Falk swung into action, with Mr. Green's

authorization. ████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████

31. ████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

32. ████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████

33. ████████  ██████████████████  ████████████  ██████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████

34. ████  ████████  ████████  ████  ██████  ████████████  ████████████  ████

██████████████████████████████████████████████████████

7

██████████████████████████████████████████████████

████████████████████████

35. Mr. Falk never acted as Mr. Green's lawyer, nor as his NBA agent in ███████████████  Mr. Falk worked largely out of his home office in Bethesda, Maryland in his communications with Mr. Green and █████████████████  ██████████████████████████

36. These ███████████  ████  ██████████  ███████████████ and required Mr. Falk to travel █████████████████ to participate in meetings and ████████████  Mr. Falk expended extensive time and effort in the process.

37. ███████████████████████████████████████
██████████  ██████████████  ██████████  ████  ████████████
█████████████████████████.

38. █████████████████████████████████████████
██████████  ████  ████████████  ████████████████████
██████████████████████████████████████  ██  ████████
███████████████████████████████████████████████████
██████████████████████████████████████

39. Given the challenges ████  ███████████  ████████████
██████████████████████████ Mr. Falk's tenacious work for Jeff Green produced a remarkable result for Mr. Green.

40. David Falk's consummate ability, reputation, drive and care for Jeff Green produced ███████████████  ████████████
██████████████████████  ██████████████████████████████

8

█████

41. Thankfully, Jeff Green returned to good health and was able to resume his NBA career.

42. Mr. Green once again turned to his trusted advisor, David Falk.

43. Once Mr. Green recovered from his heart surgery, Mr. Falk, putting his NBA agent's hat back on, negotiated a lucrative contract for Mr. Green with the Boston Celtics, *despite Mr. Green missing an entire NBA season due to the January 2012 open heart surgery.*

44. NBA insiders were stunned by the contract Mr. Falk obtained for Mr. Green – a four (4) year – $36,000,000.00 deal, fully guaranteed with no exceptions, plus potential bonuses, with the Celtics.

45. But David Falk believed in Jeff Green, supported Jeff Green, and *he fought for Jeff Green*.

46. Today, Jeff Green and his family are the beneficiaries of David Falk's indefatigable commitment to Jeff Green.

47. In Jeff Green's hour of need, his trusted advisor and friend, David Falk, had his back, and didn't stop working ██████ ██████████████████████████

48. Today, some 12 years after his health crisis, Jeff Green continues to enjoy and reap the benefits of his NBA career – thanks in large part to David Falk.

9

49. After ███ ████████ ████████ ██████ ██████ ███████
██████████████████████████████████, Mr. Falk contacted Mr. Green
in writing.

50. ████████████████████████████████████████████████
██████████████████████████████████, Mr. Falk, analogizing to a
contingency fee, requested 33.33% ██████████████████████████████
████████████████████████████ for his services ██
████████████████████████████████████████████████████████████████
███ *where Mr. Green had specifically authorized Mr. Falk's
services*.

51. To Mr. Falk's shock and bewilderment, Green paid nothing.

52. Through the rest of 2023, Mr. Falk sent a series of emails
to Mr. Green, requesting payment for his services, which Green
authorized and which were instrumental in Green ███████ ██
███████████████████████████████████████████.

53. To Mr. Falk's shock, Green has refused to pay Mr. Falk
*anything* for the highly valuable services that Green authorized ██
████████████████████████████████████████████████████████████████
████████████████.

## COUNT I – BREACH OF CONTRACT

54. The Plaintiff incorporates by reference Paragraphs 1-53
above.

55. In or around January 2012, Jeff Green engaged the services
of Mr. Falk ████████████████████████████████████████████

10

56. Mr. Green communicated with Mr. Falk at his home office, in Montgomery County, Maryland, and asked Mr. Falk for guidance and his services ███████████████████████████████████████

57. In so doing, Mr. Green knew that the services he sought from Mr. Falk were completely outside of the scope of Mr. Falk's duties as his NBA agent. The defined and limited scope of NBA agents' duties are clearly set forth in the NBPA Rules and Regulations Governing Agents, and are codified in the Standard Player-Agent Contract ("SPAC") between David Falk and Jeff Green. (*See* Falk-Green June 19, 2007 Agreement, Attachment 1.)

58. The issues Mr. Green sought Mr. Falk to address for him in 2012 ████████████████████████████████████████████████████ ███████████████████████ These issues are completely outside the scope of the SPAC between Mr. Falk and Green.

59. Mr. Green knew this when he sought Mr. Falk's help ██ ████████████████████████████████ in 2012. Green knew that Mr. Falk's services were not covered by the SPAC and its compensation plan for Mr. Falk for his NBA agent services.

60. Mr. Falk performed and completed his services tenaciously and brilliantly, ████████████████████████████ for Mr. Green.

61. The Defendant, without legal excuse, has failed to perform his obligations under his contract with Mr. Falk ████████████ ███████████████████████████████████████, namely denying

11

Mr. Falk 33.33% ███████████████████████████████████████

██████████████████████████████████████

62. The Defendant's April 2023 breach of contract constitutes a substantial failure to perform an essential element of the contract.

63. The Defendant's breach of contract has caused Mr. Falk substantial financial harm and damages.

WHEREFORE, the Plaintiff seeks the following relief against the Defendant:

A. Compensatory Damages of 33.33% ██ ██ ████ ██ ████████████████████████████████████████ ████████████████████████████████████████ ████████ ;

B. Post-judgment interest on any judgment in the amount of 6%, or as set by the Court;

C. Attorney's fees and litigation costs to be determined; and

D. Any other relief the Court deems just and proper.

### COUNT II - ANTICIPATORY BREACH OF CONTRACT

64. The Plaintiff incorporates by reference Paragraphs 1-53 above.

65. In or around January 2012, Jeff Green engaged the services of Mr. Falk ███████████████████████████████ ███████████████████ ████████████████████ ████████

12

66. Mr. Green communicated with Mr. Falk at his home office, in Montgomery County, Maryland, and asked Mr. Falk for guidance and his services ███████████████████████████████████

67. In so doing, Mr. Green knew that the services he sought from Mr. Falk were completely outside of the scope of Mr. Falk's duties as his NBA agent. The defined and limited scope of NBA agents' duties are clearly set forth in the NBPA Rules and Regulations Governing Agents, and are codified in the Standard Player-Agent Contract ("SPAC") between David Falk and Jeff Green. (*See* Falk-Green June 19, 2007 Agreement, Attachment 1.)

68. The issues Mr. Green sought Mr. Falk to address for him in 2012 related to ███████████████████████████████████████
████████████████████ These issues are completely outside the scope of the SPAC between Mr. Falk and Green.

69. Mr. Green knew this when he sought Mr. Falk's help ████
█████████████████████████████ in 2012. Green knew that Mr. Falk's services were not covered by the SPAC and its compensation plan for Mr. Falk for his NBA agent services.

70. Mr. Falk performed and completed his services tenaciously and brilliantly, █████████████████████████████████████

71. The Defendant, without legal excuse, has failed to perform his obligations under his contract with Mr. Falk ███████████
█████████████████████████████████ namely denying Mr. Falk 33.33% ██████████████████████████████████ ██

13

███████████████████████████████████████████████.

72.  The  Defendant's  April  2023  breach  constitutes  a substantial  failure  to  perform  an  essential  element  of  the contract,  and  the  Defendant  is  unwilling  to  address  ███████ ███████  owed  to  Mr.  Falk  for  his  services.

73. The Defendant's conduct constitutes anticipatory breach of contract  and  will  in  the  future  cause  Mr.  Falk  substantial financial  harm  and  damages.

WHEREFORE,  the  Plaintiff  seeks  the  following  relief  against the Defendant:

A.   Compensatory  Damages  of  33.33%  ██   ██   █████   ███ ███████████████████████   ██████████████████████████ ██████████████████████████████████████████████████ █████████████

B. Post—judgment interest on any judgment in the amount of 6%, or as set by the Court;

C. Attorney's fees and litigation costs to be determined; and

D. Any other relief the Court deems just and proper.

### COUNT III – *QUANTUM MERUIT*

74. The Plaintiff incorporates by reference Paragraphs 1-53 above. Count III is pled in the alternative to Counts I and II.

75. In or around January 2012, Jeff Green engaged the services of Mr. Falk ████████████████████████████████████████████ ██████████████████████████   ████████████████████████████

14

█████████

76. Mr. Green communicated with Mr. Falk at his home office,
in Montgomery County, Maryland, and asked Mr. Falk for guidance and
his services ███████████████████████████████████████████

77. In so doing, Mr. Green knew that the services he sought
from Mr. Falk were completely outside of the scope of Mr. Falk's
duties as his NBA agent. The defined and limited scope of NBA
agents' duties are clearly set forth in the NBPA Rules and
Regulations Governing Agents, and are codified in the Standard
Player-Agent Contract ("SPAC") between David Falk and Jeff Green.
(*See* Falk-Green June 19, 2007 Agreement, Attachment 1.)

78. The issues Mr. Green sought Mr. Falk to address for him in
2012 █████████████████████████████████████████████████████
█████████████████████ These issues are completely outside the scope
of the SPAC between Green and FAME.

79. Mr. Green knew this when he sought Mr. Falk's help ███
████████████████████████████████████ Green knew that
Mr. Falk's services were not covered by the SPAC and its
compensation plan for Mr. Falk for his NBA agent services.

80. Mr. Falk performed and completed his services tenaciously
and brilliantly, ██████████████████████████████████████

81. Mr. Green's authorization of Mr. Falk's ████████████
████████████████ created a *quantum meruit* contract between the
parties, ██████████████████████████████████████████ ████

15

████████████████████████████████████████████

82. The Defendant, without legal excuse, has failed to perform his contractual obligations to Mr. Falk under the *quantum meruit* contract, by not paying Mr. Falk *any fees* for the outstanding work and results Mr. Falk produced for Mr. Green ████████████████ Mr. Green has refused to pay Mr. Falk any part of the 33.33% ██████ ████████████████████. Green has refused to acknowledge owing Mr. Falk *any fees* ██████████████████████████████████ ████████████ thus constituting Green's anticipatory breach of the *quantum meruit* contract.

83. Based upon the Defendant's failure to pay Mr. Falk anything, and refusal to recognize Mr. Falk's *quantum meruit* rights to payment ████████████████████████████████████████ the Defendant is in breach and anticipatory breach of his obligations ████████████████████████████ under the *quantum meruit* contract.

84. The Defendant's April 2023 breach constitutes a substantial failure to perform an essential element of the *quantum meruit* contract, and the Defendant is unwilling to address ████ ████████████ owed to Mr. Falk for his services.

85. The Defendant's breach of the *quantum meruit* contract has and will in the future cause Mr. Falk substantial financial harm and damages.

WHEREFORE, the Plaintiff seeks the following relief against

16

the Defendant:

    A.  Compensatory  Damages  of  33.33%  ██  ████████  ██
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████;

    B.  Post-judgment interest on any judgment in the amount of 6%,
or as set by the Court;

    C. Attorney's fees and litigation costs to be determined; and

    D. Any other relief the Court deems just and proper.

### COUNT IV - UNJUST ENRICHMENT

    86. The Plaintiff incorporates by reference Paragraphs 1-53
above. Count IV is pled in the alternative to Counts I and II.

    87. In or around January 2012, Jeff Green engaged the services
of Mr. Falk ████████████████████████████████████████████
███████████████████████████████████████████████████████
████████

    88. Mr. Green communicated with Mr. Falk at his home office,
in Montgomery County, Maryland, and asked Mr. Falk for guidance and
his services ██████████████████████████████████████

    89. In so doing, Mr. Green knew that the services he sought
from Mr. Falk were completely outside of the scope of Mr. Falk's
duties as his NBA agent. The defined and limited scope of NBA
agents' duties are clearly set forth in the NBPA Rules and
Regulations Governing Agents, and are codified in the Standard

17

Player-Agent Contract ("SPAC") between David Falk and Jeff Green. (*See* Falk-Green June 19, 2007 Agreement, Attachment 1.)

90. The issues Mr. Green sought Mr. Falk to address for him in 2012 ███████████████████████████████████████████████████ ███████████████████████████ These issues are completely outside the scope of the SPAC between Mr. Falk and Green.

91. Mr. Green knew this when he sought Mr. Falk's help ██ ███████████████████████████████████████████████ Green knew that Mr. Falk's services were not covered by the SPAC and its compensation plan for Mr. Falk for his NBA agent services.

92. Mr. Falk performed and completed his services tenaciously and brilliantly, ███████████████████████████████████████████

93. The Defendant, without legal excuse, has failed to perform his obligations to Mr. Falk, namely denying him 33.33% ██████████ ████████████████████████████████████████████████████████ ██████████████████████ by Green's anticipatory breach.

94. Mr. Falk, through his excellent work for Green, conferred a significant benefit on the defendant, as the Defendant knows. The Defendant knew of this benefit conferred by Mr. Falk, and he readily accepted the benefit. The Defendant now seeks to deprive Mr. Falk of the financial benefits he earned and deserves. The Defendant would be unjustly enriched by keeping the benefits of Mr. Falk's hard work and success █████████████████████████ without Mr. Falk receiving the benefits of his critical work for

18

Green.

95. The Defendant's conduct toward Mr. Falk is shocking, outrageous, offends community standards, and seeks to deprive Mr. Falk of his well-earned compensation.

96. Based upon Defendant's failure to pay Mr. Falk anything, and refusal to recognize Mr. Falk's rights to payment ██████████ ████████████████████████, the Defendant is in breach and anticipatory breach of his obligations ██████████████████ ███████████████████.

97. The Defendant, without legal excuse, has failed to perform his contractual obligations to Mr. Falk, by not paying Mr. Falk *any fees* for the outstanding work and results Mr. Falk produced for Mr. Green ████████████. Green's breach constitutes a substantial failure to perform an essential element of the contract, and the Defendant is unwilling to address ████████████ owed to Mr. Falk for his services, this creating anticipatory breach as well.

98. The Defendant's Unjust Enrichment of himself has and will in the future cause Mr. Falk substantial financial harm and damages.

WHEREFORE, the Plaintiff seeks the following relief against the Defendant:

A. Compensatory Damages of 33.33% ██ ██ ████ ███ ██████████████████████████████████████ ████████████████████████████████████████

19

B. Post-judgment interest on any judgment in the amount of 6%, or as set by the Court;

C. Attorney's fees and litigation costs to be determined; and

D. Any other relief the Court deems just and proper.

### REQUEST FOR TRIAL BY JURY

The Plaintiff hereby requests a Trial by Jury in this case.


Respectfully submitted,


Peter L. Goldman, # 8806140013
12505 Park Potomac Ave.
7th Floor
Potomac, Maryland 20854
(703) 684-6476 (o)
(240) 401-4973 (c)
Pgoldmanatty@aol.com
Counsel for Plaintiff


I hereby certify that I am a member in good standing of the Maryland Bar.


Peter L. Goldman

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

DAVID B. FALK                    )
6801 Hillmead Road               )
Bethesda, Maryland 20817         )
                                 )
        Plaintiff,               )
                                 )
        v.                       )  Case No.
                                 )
JEFFREY LYNN GREEN               )
9500 SW 61st Court          )
Pinecrest, Florida 33156         )
                                 )
        Defendant.               )


**COMPLAINT - ATTACHMENT 1**



**FALK ASSOCIATES MANAGEMENT ENTERPRISES**

David B. Falk
Founder & CEO

June 19, 2007

Mr. Jeff Green
6700 Belcrest Road
Apt. 1030
Hyattsville, MD 20782

Dear Jeff:

This letter will confirm the understanding between you and Falk Associates Management Enterprises ("FAME") regarding the negotiation of your professional basketball contract and the negotiation of your marketing and endorsement contracts ("Marketing Contracts"). Based upon our discussions, FAME will represent you on the following basis.

Over the past twenty years, we have generally billed our rookie clients a four percent (4%) fee for negotiating their NBA contracts. In 1995, and again in 1999, over our strong objections, the NBA implemented a Rookie Wage Scale that significantly limits a rookies negotiating position. Accordingly, we decided to waive all negotiating fees for negotiating NBA rookie contracts.

We shall also represent you exclusively in the negotiations of your Marketing Contracts. You agree to refer to us all leads, inquiries, and offers that come to you involving these opportunities. For negotiating your Marketing Contracts, FAME shall receive a fee of twenty percent (20%) (the "Marketing Fee") on all endorsement income from leads initially generated by FAME. Additionally, we both acknowledge that there may be certain situations where you receive offers directly, which you have agreed to refer to us. FAME shall be entitled to receive its Marketing Fee on such Marketing Contracts if FAME has negotiated a substantial increase in compensation over the offer originally received by you. You and FAME shall mutually agree on the meaning of a "substantial increase". FAME shall receive its Marketing Fee, as defined in this paragraph, from any and all Marketing Contracts finalized by FAME during the Term of this Agreement, regardless of when you receive compensation for such contracts. FAME shall not be entitled to any fee for any agreements, modifications, extensions or renewals entered into after the termination of this Agreement.

The term of this Agreement shall commence on June 19, 2007 and shall continue for the length of any and all contracts negotiated by FAME (the "Term"), unless terminated earlier by either one of the parties.



Mr. Jeff Green
June 19, 2007
Page Two

We shall pay all of our expenses incurred in connection with the negotiation of your playing contract and all of our reasonable and ordinary expenses incurred in connection with the negotiation of your Marketing Contracts and the handling of your personal management services from fees paid to us. Before incurring any expenses other than those paid from fees paid to FAME, FAME will get your explicit authorization.

By signing this representation Agreement, you warrant and acknowledge that you are not a party to any pre-existing representation agreements, and that you are totally free to enter into this relationship with FAME.

I believe the above accurately reflects this Agreement that we have reached regarding representation. After you have had a chance to review this letter, please sign both originals. The extra copy is for you.

Jeff, we are very excited to be working for you and we look forward to having a long and mutually beneficial relationship.

Sincerely,

David B. Falk

DBF:men

**ACCEPTED AND AGREED TO:**

**JEFF GREEN:**

Jeff Green                                    Felicia Akingube

6-18-07
Date

Case Number: C-15-CV-24-001969
                                                                                     Other Reference Number(s):

circumstances may this information be withheld.

4.) <u>Discovery of Electronic Information</u>. Further, with regard to the discovery of electronic information, the Parties shall confer in person or by telephone and attempt to reach agreement, or narrow the areas of disagreement, as to the preservation of electronic information, if any, and the necessity and manner conducting discovery regarding electronic information, and the parties should address the following:

   a) Identification and retention of discoverable electronic information and what, if any, initial discovery and any party requests in order to identify discoverable electronic information;
   b) Exchange of discoverable information in electronic format where appropriate, including:
      i) The format of production, i.e., PDF, TIFF or JPEG file or native formats such as Microsoft Word, Word Perfect, etc., and the storage media on which the information shall be exchanged; and
      ii) Whether separate indices will be exchanged and whether the documents and information exchanged will be electronically numbered.
   c) Whether the parties agree as to the apportionment of costs for production of electronic information that is not maintained on a party's active computers, computer servers or databases;
   d) The manner of handling inadvertent production of privileged materials; and
   e) Whether the parties agree to refer electronic discovery disputes to a Special Magistrate for resolution.

The parties shall reduce all areas of agreement, including any agreements regarding inadvertent disclosure of privileged materials, to a stipulated order to be presented to the court.

5.) <u>Attorneys' Fees</u>. If a party intends to assert a "substantial claim" for attorneys' fees, counsel shall provide a written statement to the Court, setting forth whether the claim is pursuant to law, statute or contract, identifying the legal theory, statute or contract provision, and whether the claim is triable by jury. The Court will determine whether to require enhanced documentation, quarterly statements, or other procedures permitted by Maryland Rules. If triable by jury, the Court will determine the necessity of a separate discovery schedule, to include, if appropriate, the designation of experts relating to this issue. (See Rules 2-703, 2-704, and 2-705.)

6.) <u>Mediation</u>. PLEASE BE ADVISED THAT THE COURT WILL ORDER MEDIATION IN THE ABOVE-CAPTIONED CASE. PLEASE DISCUSS ADR/MEDIATION WITH THE OPPOSING PARTY (OR COUNSEL, IF APPLICABLE). Parties choosing a mediator must pay the rate agreed upon by the parties and the mediator. Where the court designates a mediator, pursuant to Rule 17-208, the parties will pay the hourly rate established by the court. Counsel/parties may object to participating in mediation in accordance with Maryland Rule 17-202(f) within thirty (30) days after entry of the order, may file (A) an object to the referral, (B) an alternative proposal, or (C) a "Request to Substitute ADR Practitioner" substantially in the form set forth in Rule 17-202(g).

4/25/2024
Date                    Administrative Judge

* IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL SHALL NOTIFY THE COURT AT (240) 777-9035 OR (240) 777-9106. QUESTIONS? Please see the Court's GUIDE TO DCM ORDERS and https://montgomerycountymd.gov/cct/departments/dcm.html.

IN THE CIRCUIT COURT FOR _____

(City/County)

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

   *Defendant:* You must file an Information Report as required by Rule 2-323(h).

*THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING*

FORM FILED BY: ☐ PLAINTIFF ☐ DEFENDANT     CASE NUMBER _____

(Clerk to insert)

CASE NAME: _____ vs. _____

                                Plaintiff                            Defendant

PARTY'S NAME: _____ PHONE: _____

PARTY'S ADDRESS: _____

PARTY'S E-MAIL: _____

If represented by an attorney:

PARTY'S ATTORNEY'S NAME: _____ PHONE: _____

PARTY'S ATTORNEY'S ADDRESS: _____

PARTY'S ATTORNEY'S E-MAIL: _____

JURY DEMAND? ☐ Yes ☐ No

RELATED CASE PENDING? ☐ Yes ☐ No If yes, Case #(s), if known: _____

ANTICIPATED LENGTH OF TRIAL?: _____ hours _____ days

### PLEADING TYPE

New Case: ☐ Original ☐ Administrative Appeal ☐ Appeal

Existing Case: ☐ Post-Judgment ☐ Amendment

*If filing in an existing case, skip Case Category/ Subcategory section – go to Relief section.*

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (Check one box.)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint – DOB of Youngest Plt:_____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Worker's Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. – Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 12/2022)        Page 1 of 3

David B. Falk vs. Jeffrey L. Green

Case Number: C-15-CV-24-001969
Other Reference Number(s):

circumstances may this information be withheld.

4.) <u>Discovery of Electronic Information</u>. Further, with regard to the discovery of electronic information, the Parties shall confer in person or by telephone and attempt to reach agreement, or narrow the areas of disagreement, as to the preservation of electronic information, if any, and the necessity and manner conducting discovery regarding electronic information, and the parties should address the following:

    a) Identification and retention of discoverable electronic information and what, if any, initial discovery and any party requests in order to identify discoverable electronic information;
    b) Exchange of discoverable information in electronic format where appropriate, including:
       i) The format of production, i.e., PDF, TIFF or JPEG file or native formats such as Microsoft Word, Word Perfect, etc., and the storage media on which the information shall be exchanged; and
       ii) Whether separate indices will be exchanged and whether the documents and information exchanged will be electronically numbered.
    c) Whether the parties agree as to the apportionment of costs for production of electronic information that is not maintained on a party's active computers, computer servers or databases;
    d) The manner of handling inadvertent production of privileged materials; and
    e) Whether the parties agree to refer electronic discovery disputes to a Special Magistrate for resolution.

The parties shall reduce all areas of agreement, including any agreements regarding inadvertent disclosure of privileged materials, to a stipulated order to be presented to the court.

5.) <u>Attorneys' Fees</u>. If a party intends to assert a "substantial claim" for attorneys' fees, counsel shall provide a written statement to the Court, setting forth whether the claim is pursuant to law, statute or contract, identifying the legal theory, statute or contract provision, and whether the claim is triable by jury. The Court will determine whether to require enhanced documentation, quarterly statements, or other procedures permitted by Maryland Rules. If triable by jury, the Court will determine the necessity of a separate discovery schedule, to include, if appropriate, the designation of experts relating to this issue. (See Rules 2-703, 2-704, and 2-705.)

6.) <u>Mediation</u>. PLEASE BE ADVISED THAT THE COURT WILL ORDER MEDIATION IN THE ABOVE-CAPTIONED CASE. PLEASE DISCUSS ADR/MEDIATION WITH THE OPPOSING PARTY (OR COUNSEL, IF APPLICABLE). Parties choosing a mediator must pay the rate agreed upon by the parties and the mediator. Where the court designates a mediator, pursuant to Rule 17-208, the parties will pay the hourly rate established by the court. Counsel/parties may object to participating in mediation in accordance with Maryland Rule 17-202(f) within thirty (30) days after entry of the order, may file (A) an object to the referral, (B) an alternative proposal, or (C) a "Request to Substitute ADR Practitioner" substantially in the form set forth in Rule 17-202(g).

4/25/2024
Date

Administrative Judge

* IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL SHALL NOTIFY THE COURT AT (240) 777-9035 OR (240) 777-9106. QUESTIONS? Please see the Court's GUIDE TO DCM ORDERS and https://montgomerycountymd.gov/cct/departments/dcm.html.

IN THE CIRCUIT COURT FOR _____ ☒

*(City/County)*

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

    *Defendant:* You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☐ PLAINTIFF ☐ DEFENDANT    CASE NUMBER _____

    *(Clerk to insert)*

**CASE NAME:** _____ vs. _____

                      Plaintiff                             Defendant

**PARTY'S NAME:** _____ PHONE: _____

**PARTY'S ADDRESS:** _____

**PARTY'S E-MAIL:** _____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** _____ PHONE: _____

**PARTY'S ATTORNEY'S ADDRESS:** _____

**PARTY'S ATTORNEY'S E-MAIL:** _____

**JURY DEMAND?** ☐ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☐ No  If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours _____ days

### PLEADING TYPE

**New Case:** ☐ Original ☐ Administrative Appeal ☐ Appeal

**Existing Case:** ☐ Post-Judgment ☐ Amendment

*If filing in an existing case,* skip Case Category/ Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint – DOB of Youngest Plt:_____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Worker's Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. – Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 12/2022)           Page 1 of 3

| IF NEW OR EXISTING CASE: RELIEF (Check All that Apply) | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☐ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☐ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☐ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.    ☐ Liability is not conceded, but is not seriously in dispute.    ☐ Liability is seriously in dispute.

| MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs) |
|---|
| ☐ Under $10,000     ☐ $10,000 - $30,000     ☐ $30,000 - $100,000     ☐ Over $100,000 |
| ☐ Medical Bills $_____     ☐ Wage Loss $_____     ☐ Property Damages $_____ |

| ALTERNATIVE DISPUTE RESOLUTION INFORMATION |
|---|

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
A. Mediation       ☐ Yes ☐ No                C. Settlement Conference    ☐ Yes ☐ No
B. Arbitration     ☐ Yes ☐ No                D. Neutral Evaluation       ☐ Yes ☐ No

| SPECIAL REQUIREMENTS |
|---|

☐ If a Spoken Language Interpreter is needed, check here and attach form CC-DC-041

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, check here and attach form CC-DC-049

| ESTIMATED LENGTH OF TRIAL |
|---|

*With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL.*

***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less          ☐ 3 days of trial time
☐ 1 day of trial time               ☐ More than 3 days of trial time
☐ 2 days of trial time

| BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM |
|---|

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of          ☐ **Standard** - Trial within 18 months of
Defendant's response                                Defendant's response

EMERGENCY RELIEF REQUESTED

**COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE
MANAGEMENT PROGRAM (ASTAR)**

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under
Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** – Trial within 7 months of          ☐ **Standard** – Trial within 18 months of
Defendant's response                                    Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY,
PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

**CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)**

| | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☐ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

**CIRCUIT COURT FOR BALTIMORE COUNTY**

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

_____          _____
Date                                        Signature of Attorney / Party          Attorney Number

_____          _____
Address                                        Printed Name

_____
City          State          Zip Code

**CC-DCM-002** (Rev. 12/2022)                    Page 3 of 3